SIGNED: May 28th, 2021

THIS ORDER HAS BEEN ENTERED ON THE DOCKET.
PLEASE SEE DOCKET FOR ENTRY DATE.

_____
Paul M. Black
UNITED STATES BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: | |
| EMERALD GRANDE, LLC | CHAPTER 11 |
| Debtor. | Case No. 1:17-bk-00021 |
| EMERALD GRANDE, LLC | |
| Plaintiff. | |
| v. | Adversary Pro. No. 1:20-ap-00028 |
| KM HOTELS, LLC, and SAFE HARBOR TITLE COMPANY, LLC, | |
| Defendants. | |

## MEMORANDUM OPINION

This matter comes before the Court on cross-motions for summary judgment filed by Emerald Grande, LLC (the "Debtor" or "Plaintiff"); KM Hotels, LLC ("KM"); and Safe Harbor Title Company, LLC ("Safe Harbor"). The Plaintiff filed an adversary proceeding against KM and Safe Harbor (collectively "the Defendants") seeking damages for an alleged breach of a hotel sale contract and escrow agreement. KM contends that it properly terminated the contract after the Debtor failed to cure certain title defects. Safe Harbor contends that it did not breach the escrow agreement by returning the earnest money deposit to KM upon its termination of the contract. Once the matter was fully briefed, the Court heard argument on May 11, 2021. At the

conclusion of the hearing, the Court took the matter under advisement.[1] For the reasons set forth below, the Court will grant the Defendants' motions for summary judgment, deny the Plaintiff's motion for summary judgment, and dismiss the Amended Complaint.

## **FACTUAL BACKGROUND**

This case concerns a hotel sale that did not close. The Debtor owns a hotel operating as a La Quinta Inn & Suites in Kanawha County, West Virginia (the "Elkview Hotel"). AP ECF 70, pp. 1-2. In June 2016, torrential flood waters destroyed the culvert bridge connecting the Elkview Hotel to the public road. AP ECF 70, p. 4. Access to the Elkview Hotel was not restored until over a year later. AP ECF 68, p. 3. The Debtor filed a voluntary chapter 11 petition in this Court on January 11, 2017. Bankr. ECF 1.

After filing its petition, the Debtor hired a real estate brokerage firm to market and sell the Elkview Hotel. Bankr. ECF 523. KM offered to purchase the Elkview Hotel for $3,600,000.00 and entered into a Purchase and Sale Agreement ("PSA") with the Debtor on August 9, 2019. The Court approved the PSA and authorized the sale by Order entered September 11, 2019. Bankr. ECF 712.

The sale did not close due to a title dispute. On September 20, 2019, KM sent a letter to the Debtor objecting to certain title exceptions related to encroachments and access to the Elkview Hotel. AP ECF 61, Ex. G. The title exceptions are found at AP ECF 59, Ex. 5.[2] To satisfy those objections and deliver insurable title, the title company required that COMM 2013, the secured creditor of Tara Retail Group, LLC ("Tara"),[3] release or subordinate its deed of trust

---

[1] United States Bankruptcy Judge Paul M. Black, Western District of Virginia, sitting by designation.

[2] The ALTA Title Commitment provided by First American Title Insurance Company has as an exception "[l]ack of legal right of ingress and egress to and from the land." *See* Ex. 5, Exception 47.

on the Elkview Crossings Shopping Mall ("Crossings Mall"). COMM 2013 refused to do so. AP ECF 61, Ex. P, Plaintiff's Affidavit, at ¶43. On January 29, 2020, KM sent a conditional notice to the Debtor terminating the PSA. AP ECF 61, Ex. K. On April 13, 2020, KM requested return of its deposit and terminated the PSA. AP ECF 61, Ex. N. Safe Harbor returned the $500,000.00 escrow deposit to KM, upon KM's request, but without the Debtor's consent.

The Debtor filed a complaint initiating this adversary proceeding on June 25, 2020, asserting claims against KM and Mayur Patel, KM's managing member, for an alleged breach of the PSA, and against Safe Harbor for an alleged breach of an Earnest Money Escrow Agreement ("Escrow Agreement"). AP ECF 1. On August 17, 2020, the Debtor filed a First Amended Complaint removing Patel as a defendant and including amended allegations to address issues raised by Safe Harbor in its motion to dismiss the initial complaint. AP ECF 25. The Debtor contends that it delivered good title to KM and that Safe Harbor could not return the escrow deposit without its consent. The Amended Complaint seeks damages in the amount of no less than $3,600,000.00 against KM for breach of the PSA, and damages of no less than $500,000.00 from Safe Harbor for breach of the Escrow Agreement. In the alternative, the Debtor asks for a decree of specific performance compelling KM to close the transactions described in the PSA.

The Court entered an Order scheduling the trial of this matter for June 24 – 25, 2021 and requiring all parties to file dispositive motions by March 31, 2021, with responsive and reply briefs to be filed thereafter. AP ECF 35. In compliance with that Order, KM, Safe Harbor, and the Debtor filed cross-motions for summary judgment on March 31, 2021. AP ECF 58, 59, 61.

---

[3] Tara and the Debtor are controlled by the same principal, William Abruzzino. Bankr. ECF 419, p. 1, n.1. Tara owns the Crossings Mall. The Elkview Hotel is adjacent. Public access to the Crossings Mall and the Elkview Hotel is provided by the same culvert bridge. *See* AP ECF 61, Ex. F.

3

The parties submitted response and reply briefs, and counsel gave oral arguments at a pre-trial hearing on May 11, 2021.

## JURISDICTION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by the Amended Standing Order of Reference entered by the United States District Court for the Northern District of West Virginia on April 2, 2013.  The Court concludes that this matter is a "core" bankruptcy proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).  Venue is proper pursuant to 28 U.S.C. § 1409.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56, applicable in adversary proceedings through Federal Rule of Bankruptcy Procedure 7056, states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citing *Philip Morris Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997)).  "When considering each individual motion, the court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." *Rossignol*, 316 F.3d at 523 (citing *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)). *See Terry Properties, LLC v. Farm Credit of the Virginias* (*In re Terry Properties, LLC*), No. 16-71449, A.P. No. 16-07038, 2017 WL 507277, at *3 (Bankr. W.D. Va. Feb. 3, 2017), aff'd, No. 1:17CV00004, 2017 WL 3736772 (W.D. Va. Aug. 30, 2017).

**CONCLUSIONS OF LAW**

I.     <u>The Debtor's and KM's Cross-Motions for Summary Judgment</u>

This dispute turns on contract interpretation. The Court will apply the undisputed facts to the PSA and Escrow Agreement. Section 5.2.2 of the PSA controls the dispute and provides as follows:

> 5.2.2 <u>Access to Property</u>. The Parties acknowledge that the Real Property does not have deeded access to a public right of way as of the date of this Agreement. Seller covenants and agrees that it will obtain an access easement providing for deeded ingress/egress between a public right of way and the Real Property, in form acceptable to Purchaser and sufficient to allow the Title Company to issue an ALTA access endorsement in standard form insuring Purchaser's access to the Real Property (the "<u>Access Easement</u>"). Purchaser's obligation to close the transactions described in this Agreement is subject to satisfaction of the preceding covenant.

AP ECF 61, Ex. A, p. 16. The PSA designates the "Title Company" as Safe Harbor Title Company, LLC.[4] *Id.* at p. 8. The "Seller" is the Debtor. KM is the "Purchaser." If the Debtor performed its obligations under Section 5.2.2, then KM wrongfully failed to perform under the PSA. If the Debtor did not satisfy its obligations under Section 5.2.2, then a condition precedent to closing did not occur, and KM was not obligated to close.

The Debtor advances two theories under which it satisfied the required access easement obligations. First, the Debtor contends the easements were expressly granted by a 1999 deed (the "Plaza Deed"). Under the Plaza Deed, the Grantor made the following grant to the Grantee:

> a perpetual, mutual and reciprocal cross easement and right of way over, across and through the access roads, ways and lanes and the parking areas of the other for all vehicles and pedestrians as well as for the installation and maintenance of utility facilities to the property of the other party.

---

[4] Safe Harbor is the agent for multiple title companies including First American Title, Old Republic National Title, Chicago Title Insurance, and Fidelity National Title.

AP ECF 61, Ex. C. The Debtor contends that when it acquired title to the hotels, it also acquired the easements described in the Plaza Deed.[5] Second, the Debtor alleges it has prescriptive easements ensuring access to the public road. In 2013, when Tara acquired the Crossings Mall, the lender commissioned a survey (the "Tara Survey") of the property. The Tara Survey showed many of the same encroachment issues. *See* AP ECF 25, Ex. F. The Debtor argues that, due to the Tara Survey, COMM 2013 was at least on inquiry notice of the existence of the encroachments. Therefore, having notice, when COMM 2013 took its security interest in the Crossings Mall, it was subject to the easements. Under either theory, the Debtor contends it satisfied the covenant in Section 5.2.2.

Both of these arguments miss the mark. The Debtor's property rights under the Plaza Deed or prescriptive easement rights are not before the Court. Whether KM breached its obligations as Purchaser under the PSA is before the Court. Under the PSA, the Debtor did not need to merely provide access to the property—it needed to provide <u>insurable</u> access.[6] The Debtor argues it provided the former, but it was contractually obligated to provide the latter. This it did not do.

The Debtor's easement theories, irrespective of merit, were unavailing to the Title Company's chosen insurer, First American Title Insurance Company ("First American"), or at least were insufficient. Section 5.2.2 expressly states the access easement shall be "in form acceptable to Purchaser" and "sufficient to allow the Title Company to issue an ALTA access endorsement." AP ECF 61, Ex. A, p. 16. Based on its review of all relevant documents, First

---

[5] There is no further description of these easements, either in terms of scope or location.

[6] Without insurable access, KM faced the prospect of defending a claim by COMM 2013 as to the validity of the easements. Further, if COMM 2013 foreclosed on the Crossings Mall, any subsequent purchaser would arguably take the property free and clear of the easements, which would be foreclosed out. As counsel for KM wrote in an e-mail to counsel for the Debtor: "[W]e can't 'buy' a potential lawsuit." AP ECF 59-15, p. 4.

6

American determined that in order to issue an ALTA endorsement, it would need COMM 2013 to subordinate or release its deed of trust on the easements. The Debtor made such request to COMM 2013, but COMM 2013 declined. At the hearing, counsel for the Debtor stated this was a "silly" position for First American to take. The reality is that such frustration does not change the fact that it was the Debtor's obligation to provide insurable access under the PSA; the Debtor cannot avoid its obligation simply because it disagreed with First American's decision. The Court finds that the Debtor failed to obtain an easement access in a form sufficient to allow First American to issue an ALTA endorsement and in a form acceptable to KM as the PSA required.

As a result of the Debtor's failure to obtain insurable title, KM's performance was excused. Under Section 5.2.2, KM's obligation to close the transactions contemplated in the PSA was conditioned upon the Debtor's covenant to deliver insurable title. KM was no longer bound to close on the Elkview Hotel without the insurable title it bargained for. KM sent a termination letter to the Debtor on April 13, 2020 giving notice that it was not performing under the PSA due to the uncured title deficiencies. *See* AP ECF 61, Ex. N. The Debtor's non-performance of its covenant constituted a failure to comply with a condition precedent which excused KM's further performance under the PSA. Accordingly, the Court finds that KM did not breach the PSA. Therefore, KM is entitled to judgment as a matter of law. KM's Motion for Summary Judgment will be granted, and the Debtor's Motion for Summary Judgment against KM will be denied.

II.  The Debtor's and Safe Harbor's Cross-Motions for Summary Judgment

Section 3.2.1 of the PSA required an earnest money deposit of $500,000.00 be placed into escrow by KM pursuant to the Escrow Agreement. Safe Harbor drafted the Escrow Agreement and circulated it among the parties. While KM made the escrow deposit pursuant to

the PSA, the Escrow Agreement was never fully executed. KM and Safe Harbor did not sign the Escrow Agreement. The only party to sign was the Debtor.

The Amended Complaint alleges that Safe Harbor breached the Escrow Agreement by releasing the $500,000.00 deposit to KM without the Debtor's consent. The Debtor bases this argument on Section 1(a) of the Escrow Agreement which states: "The Escrow Funds shall be paid and delivered in accordance with the written instructions jointly executed by the parties to this Agreement." AP ECF 61, Ex. B. The Debtor advances various theories as to why Safe Harbor should be held accountable, including acceptance by performance and implied contract. However, the Debtor conceded at oral argument that if KM had the right to not close under the PSA, then it had no right to hold up the return to KM of the funds held in escrow by Safe Harbor. The Court has so ruled, therefore Safe Harbor is entitled to judgment as a matter of law. Safe Harbor's Motion for Summary Judgment will be granted and the Debtor's Motion for Summary Judgment against Safe Harbor will be denied.[7]

## CONCLUSION

For all of the above reasons, KM's and Safe Harbor's motions for summary judgment are granted and Emerald Grande's motion for summary judgment is denied. This Adversary Proceeding will be dismissed by separate Order entered contemporaneously herewith.

---

[7] The Debtor's motion to strike the affidavit of Melissa A. McPherson is denied as moot.