SIGNED: July 27th, 2021

THIS ORDER HAS BEEN ENTERED ON THE DOCKET.
PLEASE SEE DOCKET FOR ENTRY DATE.

_____
Paul M. Black
**UNITED STATES BANKRUPTCY JUDGE**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: | ) |
| | ) **CHAPTER 11** |
| **EMERALD GRANDE, LLC** | ) |
| | ) **Case No. 1:17-bk-00021** |
| Debtor. | ) |
| **EMERALD GRANDE, LLC** | ) |
| | ) |
| Plaintiff. | ) |
| | ) |
| v. | ) **Adversary Pro. No. 1:20-ap-00028** |
| | ) |
| **KM HOTELS, LLC, and** | ) |
| **SAFE HARBOR TITLE COMPANY, LLC,** | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Before the Court is KM Hotels, LLC's ("KM") Motion For Award Of Reasonable Attorneys' Fees and Costs (the "Motion") against Emerald Grande, LLC (the "Debtor").[1] For the reasons discussed below, the Court will grant the Motion, with certain modifications. KM is entitled to an award of $124,667.94 in attorneys' fees and expenses.

## BACKGROUND

This demand for attorneys' fees arises out of a contractual dispute litigated in Adversary Proceeding No. 1:20-ap-00028 (the "Adversary Proceeding"). On August 9, 2019, KM and the

---

[1] United States Bankruptcy Judge Paul M. Black, Western District of Virginia, sitting by designation.

Debtor entered into a Purchase and Sale Agreement ("PSA") for a La Quinta Inn & Suites (the "Hotel") in Kanawha County, West Virginia. AP ECF 25-1. After the Debtor failed to deliver insurable title to the property, KM declined to close the transaction. Thereafter, the Debtor commenced the Adversary Proceeding seeking damages of $3.6 million (the purchase price) from KM for an alleged breach of the PSA. KM retained the firms of Spotts Fain, P.C. ("Spotts Fain") and Goodwin & Goodwin, LLP ("Goodwin") to represent KM in the Adversary Proceeding. After briefing and oral argument, the parties filed cross-motions for summary judgment. The Court found that KM did not breach the PSA. Accordingly, the Court entered a Memorandum Opinion and Order granting summary judgment to KM on all counts and dismissed the Adversary Proceeding. AP ECF 79, 80. Following the Court's Order, KM filed the Motion seeking a total of $126,409.24 as reimbursement for costs and attorneys' fees expended in the Adversary Proceeding. AP ECF 84, p. 15. The Debtor filed a response arguing the attorneys' fees and expenses requested are unreasonable and excessive. AP ECF 91, p. 9. KM then filed a reply brief and the parties informed the Court that they wished to proceed on the briefs as submitted without oral argument. The issue is now ripe for resolution.

## LEGAL STANDARD

### I.    Basis for Attorneys' Fees

The American Rule provides the basic reference point for awards of attorneys' fees. *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126, 135 S. Ct. 2158, 2164 (2015). Dating back to eighteenth-century common law, the principle is that "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Id.* (citing *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–253, 130 S. Ct. 2149, 176 L.Ed.2d 998

(2010)). West Virginia adheres to the American Rule and generally each litigant bears his or her own attorneys' fees. *Branch Banking & Tr. Co. v. Meridian Holding Co., LLC*, No. CV 3:18-0486, 2020 WL 2736430, at *2 (S.D.W. Va. May 26, 2020). However, West Virginia caselaw recognizes that "[a]n award of attorney's fees is appropriate where the document governing the parties' relationship contains a clause allowing for recovery of attorneys' fees." *Amaker v. Hammond's Mill Homeowners Ass'n, Inc.*, No. 15-0203, 2015 WL 6954981, at *9 (W. Va. Nov. 6, 2015). KM relies on such a governing document here. Section 16.11 of the PSA provides:

> 16.11 <u>Prevailing Party.</u> If any litigation or other court action, arbitration or similar adjudicatory proceeding is commenced by any Party to enforce its rights under this Agreement against any other Party, all fees, costs and expenses, including, without limitation, reasonable attorneys' fees and court costs, incurred by the prevailing Party in such litigation, action, arbitration or proceeding shall be reimbursed by the losing Party.

AP ECF 59, Ex. 1. The Court considers this provision unambiguous and enforceable, and thus a proper basis for assessing an award of attorneys' fees against the Debtor.

## II.  Standard for Awarding Attorneys' Fees

The Fourth Circuit has adopted a three-step process for the proper calculation of attorneys' fees. *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013). First, a court "must 'determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate.'" *Id.* (quoting *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009)). In deciding what constitutes a "reasonable" number of hours and rate, courts in the Fourth Circuit apply a twelve-factor test set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The twelve *Johnson* factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in

3

>controversy and the results obtained; (9) the experience, reputation and ability of
>the attorney; (10) the undesirability of the case within the legal community in which
>the suit arose; (11) the nature and length of the professional relationship between
>attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir. 1978) (adopting twelve factors set forth in *Johnson*). Second, a court "should subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Grissom v. The Mills Corp.*, 549 F.3d 313, 321 (4th Cir. 2008) (quoting *Johnson v. City of Aiken*, 278 F.3d 333, 337 (4th Cir. 2002)). Third, "[o]nce the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id*. "[W]here full relief is obtained, the plaintiff's attorney should receive 'a fully compensatory fee,' and in cases of exceptional success, even an enhancement." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174–75 (4th Cir. 1994).

## DISCUSSION

KM asserts that it is the prevailing party in the Adversary Proceeding and pursuant to Section 16.11 of the PSA is entitled to reimbursement of its reasonable attorneys' fees, costs, and expenses. The Debtor contends that KM's fee request is unreasonable. The Court is thus left to consider whether KM's submitted expenses are, in fact, reasonable.

### I.     Lodestar Calculation

The Court's review begins with the lodestar analysis. Here, KM's total fee request is $126,409.24.[2] Counsel for KM billed a total of 418.15 hours. AP ECF 84, pp. 3-4. The rates charged vary based upon the attorney's experience. Based upon these rates and hours, KM

---

[2] The total fee request consists of: (i) $97,905.50 billed by Spotts Fain; (ii) $8,858.34 in expenses incurred by Spotts Fain; (iii) $19,595.00 billed by Goodwin; and (iv) $50.40 expenses incurred by Goodwin. AP ECF 84-1, pp. 13-14.

4

asserts that its lodestar figure is $117,500.50.  AP ECF 84-1, p. 5.  The Court will review the lodestar figure to determine whether an upward or downward adjustment is warranted.

### A. *Reasonableness of Hourly Rates*

KM's submitted billing statement reveals the following hourly compensation for its attorneys and paralegals:

| Timekeeper | Hours Worked / Hourly Rate | Lodestar |
|---|---|---|
| Edward E. Bagnell, Jr. (shareholder) | 48.0 hours x $335.00 | $16,080.00 |
|  | 55.8 hours x $350.00 | $19,530.00 |
| David V. DuVal (shareholder) | 12.7 hours x $350.00 | $4,445.00 |
|  | 0.2 hours x $360.00 | $72.00 |
| S. Spencer Katona (partner) | 8.8 hours x $275.00 | $2,420.00 |
|  | 5.4 hours x $285.00 | $1,539.00 |
| Christopher A. Hurley (associate) | 93.9 hours x $225.00 | $21,127.50 |
|  | 129.70 hours x $250.00 | $32,425.00 |
| Carrie Goodwin Fenwick (local counsel) | 12.2 hours x $400.00 | $4,880.00 |
| Robert S. Pruett (local counsel) | 49.05 hours x $300.00 | $14,715.00 |
| Paralegal Services | 0.6 hours x $100.00 | $60.00 |
|  | 1.8 hours x $115.00 | $207.00 |
| **Total** | **418.15 hours** | **$117,500.50**[3] |

KM avers that the requested hourly rates are reasonable and in line with past fee awards from the Northern District of West Virginia. *See Wolfe v. Green*, No. 2:08-cv-01023, 2010 WL 3809857, at *4 (S.D.W. Va. Sept. 24, 2010) ("In determining the market rate, the court should consider evidence of what attorneys earn for performing similar services in similar circumstances).  In support, KM cites *Wickland v. Am. Mountaineer Energy, Inc.*, No. 1:17-CV-205, 2019 U.S. Dist. LEXIS 173815 (N.D.W. Va. Jan. 14, 2019), a contractual dispute case where the court awarded fees ranging between $210.00 and $425.00 per hour.  Here, all the

---

[3] This table excludes hours billed by Spotts Fain employees whose time was not actually charged to KM.  *See* AP ECF 84-1, p. 13, n. 7.

5

hourly rates requested fit within those boundaries.  Examining the hourly rates, the Court finds that KM's hourly rates are eminently reasonable for this region's legal market.  The Court sees no reason to arbitrarily lower or raise these rates in this case, particularly when the Debtor has not submitted evidence or argument that these rates are inflated.  The Court finds that counsel for KM's hourly rates are reasonable.

### B.     Reasonableness of Time Entries

Next, the Court examines the reasonableness of the time entries.  In support of its fee request, KM has submitted invoices that are precise, detailed, and demonstrate legal work directly related to the Adversary Proceeding.  The Debtor bases its objection on this point, arguing that the 418.15 hours expended by counsel for KM was excessive, duplicative, and unreasonable for a case of this size.  The Court has undertaken a review of the time records, past hearings, and the docket.  Based on such a review, while applying the *Johnson* factors, the Court can determine whether the 418.15 hours expended were necessary and reasonable.  The Court will address the relevant factors in turn.[4]

The first *Johnson* factor considers the time and labor required in the litigation.  KM maintains that the total hours billed were "reasonable in light of the variety of legal issues raised, the skill required, and the time and labor expended."  AP ECF 84-1, p. 9.  The Debtor, on the other hand, contends that the Adversary Proceeding was a simple breach of contract claim and that "[n]o specialized knowledge was necessary in this case and no complex issues were present to require the use of six attorneys and over 400 hours."  AP ECF 91, p. 8.  This implicates the second and third *Johnson* factors.  While the Court agrees that the contract claim was relatively

---

[4] *Johnson* factors four, six, seven, and ten are not pertinent to this case and were not expressly addressed by either party.

straightforward, the underlying legal theories and facts were not.  To prepare an adequate defense, counsel for KM needed to research not only contract principles, but also discrete legal issues relating to prescriptive easements, mutual mistake, marketable title, and good faith and fair dealing.  The Debtor's multiple title theories also broadened the scope of discovery.[5]

Specialized knowledge of other related cases was also necessary for KM's preparation—this was but one adversary proceeding in a plethora of litigation all resulting from a devastating West Virginia flood that occurred in June 2016.  KM needed to familiarize itself with the main bankruptcy case, as well as the related Tara Retail Group, LLC ("Tara") bankruptcy, as the facts were crucial to the Debtor's legal theories in the Adversary Proceeding.  For example, in its briefing and at oral argument, the Debtor relied on statements made by Judge Flatley in the Tara bankruptcy to support its prescriptive easement theory.

Aside from substantive issues, there was also procedural complexity at the litigation's onset.  The case ended on cross-motions for summary judgment but getting there required diligent legal work.  The Debtor filed its original complaint against both KM and its managing member, Mayur Patel ("Patel").  Counsel for KM drafted and filed KM's and Patel's Answer to Complaint, along with Patel's Motion to Dismiss for Failure to State a Claim and an accompanying brief.  *See* AP ECF 11, 12, 13.  Because Patel was not a proper party, the Debtor did not challenge the motion to dismiss and elected to file a First Amended Complaint removing Patel from the case.  In response, counsel for KM drafted and filed an Answer to First Amended Complaint.  *See* AP ECF 29.  Thus, several motions were necessary before the case became ripe for the Court to rule on summary judgment.

---

[5] KM spent significant time complying with the Debtor's discovery requests and contracted with e-discovery provider KLDiscovery to collect, process, host, and assist with production of documents, incurring $8,439.25 in expenses.  AP ECF 84-1, Ex. D.

7

The fifth of the twelve *Johnson* factors considers the customary fee for like work. It is the applicant's burden to "produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." *Westmoreland Coal Co. v. Cox*, 602 F.3d 276, 289 (quoting *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)). Here, Spotts Fain has provided an affidavit from Edward E. Bagnell, Jr., stating that the requested hourly rates reflect the fair market rates of the Spotts Fain attorneys involved in this litigation and that those rates are the same rates charged to other paying clients of the firm. AP ECF 84-1, Ex. B. Spotts Fain has also provided the expert witness report of M. David Griffith, Jr., an experienced commercial litigator in West Virginia, stating that "billing rates for this matter are in line with, or slightly below the rates charged by attorneys of similar background and legal experience." AP ECF 84-1, Ex. C, p. 7. KM's evidence along with the Court's own knowledge of legal practice in this region is sufficient to conclude that Spotts Fain's and Goodwin's fees fall within customary bounds.[6]

The eighth *Johnson* factor, one the Court deems crucial, considers the amount in controversy and the results obtained. Here, the Debtor sought damages against KM in the amount of no less than $3.6 million (the sale price in the PSA), plus interest, legal fees, and expenses. AP ECF 25, p. 23. While the Hotel was later sold at auction for $2,652,250.00, that amount is still nearly one million dollars less than the sale price in the PSA. Bankr. ECF 915, Ex. A. Thus, even if the sale closed, KM's potential liability on a judgment could have, in theory, exceeded one million dollars. With no small sum at stake, counsel for KM achieved a commendable result for its client—summary judgment on all counts and dismissal of the Adversary Proceeding. AP ECF 80. Factor eight favors reasonableness.

---

[6] Although based in Roanoke, Virginia, the Court is well familiar with the West Virginia legal market, along with the similarity in rates to those charged in the Western District of Virginia.

The ninth *Johnson* factor is also significant, as this matter involved the work of several Spotts Fain attorneys and a paralegal, as well as two local attorneys from Goodwin.[7] The Debtor does not dispute the rates charged given the accomplishments and qualifications of the attorneys involved. AP ECF 91, pp. 6-7. Combined, this represents a significant pool of legal experience, reputation, and ability. The Court expresses no concern on this factor.

The eleventh and twelfth *Johnson* factors consider the nature and length of the professional relationship between attorney and client, and attorneys' fees awards in similar cases. Spotts Fain notes in its brief that KM is a regular client of the firm and has an established relationship. Mr. Griffith's report notes that KM has utilized David V. DuVal as its primary real estate counsel during an approximately seven-year period, and Mr. Bagnell has successfully represented KM in prior real estate litigation as well. AP ECF 84-1, Ex. C, p. 9. The attorneys' fees requested are consistent with awards granted in the Northern District of West Virginia. *See General Motors LLC v. Bill Kelley, Inc.*, No. 2:12-cv-51, 2013 U.S. Dist. LEXIS 141709 (N.D.W. Va. Oct. 1, 2013*)* (associate rates falling between $200.00 and $250.00 an hour were reasonable based on the average rates for a general litigator in the Northern District of West Virginia); *See also Dijkstra v. Carenbauer*, No. 5:11-CV-152, 2015 U.S. Dist. LEXIS 193920, at *14 (N.D.W. Va. July 29, 2015) (awarding fees under the West Virginia Consumer Credit and Protection Act based on hourly rates for attorneys between $255.00 and $400.00 per hour). These two factors also point towards the reasonableness of the fee award.

The Court's knowledge of legal practice in this region, review of the invoices, and consideration of the *Johnson* factors leads it to conclude that the total number of hours worked

---

[7] Because of their limited involvement, Spotts Fain is not seeking fees for shareholders Robert Chappell, Jennifer West, and Timothy Moore. *See* AP ECF 84-1, p. 6, n.4.

9

by KM attorneys and paralegals in this case—418.15 in total—is objectively reasonable and suitable for use as a starting point for calculating a lodestar sum. The Court does have, however, one caveat.

The lion's share of the legal work on this matter, in terms of time, was done by associate Christopher A. Hurley. The vast majority of Mr. Hurley's billing entries are broken down into .10 of an hour increments. Indeed, some are even broken down into .05 increments. The Court is easily able to track Mr. Hurley's efforts both on what he billed time — and, importantly — how much time was expended on each task. Mr. Bagnell was the lead attorney on the case and a partner. His entries, however, were not done in a similar manner. While he broke out his time entries by task, he did not separately break down how much time was expended on each task within a given time entry. Such "lumping" of time entries is disfavored both in this Court and elsewhere.

"Entries that lump multiple tasks together under a single time entry present a significant barrier to a reasonableness review." *Route Triple Seven Ltd. P'ship v. Total Hockey, Inc.,* 127 F. Supp. 3d 607, 621 (E.D. Va. 2015). "'Inadequate documentation includes the practice of grouping, or 'lumping' several tasks together under a single entry, without specifying the amount of time spent on each particular task.'" *Project Vote/Voting for Am., Inc. v. Long,* 887 F.Supp.2d 704, 716 (E.D. Va. 2012) (quoting *Guidry v. Clare*, 442 F.Supp.2d 282, 294 (E.D. Va. 2006)). In these circumstances, courts should exercise sound judgment and based on knowledge of the case and litigation experience, reduce the number of hours by an appropriate percentage.[8]

---

[8] The Court is aware that some courts, including one in this district, have disallowed lumped time entries in their entirety. *See In re Breeden*, 180 B.R. 802 (Bankr. N.D.W. Va. 1995). However, other courts have generally reduced such fees by 10%-20%. *See Route Triple Seven.* In this case, where the Court can make a reasonable determination of the tasks performed given its knowledge of the litigation and the efforts undertaken, a modest percentage reduction is the more appropriate course.

Here, most of Mr. Bagnell's lumped tasks under .5 of an hour are easily discernable, and those will be allowed. However, most of those exceeding .5 of an hour will be reduced by 10%, given that they are reasonably well documented in terms of description, but not broken out by time. By the Court's calculation, the lumped time entries total $17,408.00, including $9,100.00 (26 hours at $350.00 an hour) and $8,308.00 (24.8 hours at $335.00 an hour). The foregoing total will be reduced by 10%, or $1,740.80.

In sum, each of the *Johnson* factors is either favorable or neutral to KM in the Court's reasonableness analysis. A reduction in counsel's fee is therefore unwarranted, except due to the lumped billing described above. The Court concludes that KM's lodestar figure is $115,759.20 ($117,500.50 - $1,740.80). KM is entitled to their lodestar sum plus expenses of $8,908.74.

## CONCLUSION

For all of the above reasons, the Motion is granted with the modifications above. The Court awards a total of $115,759.20 in attorneys' fees and $8,908.74 in expenses to KM.[9]

A separate Order will be entered contemporaneously herewith.

---

[9] Although not presently before the Court, the Debtor notes in its brief that it reserves the right to object to KM's fees to the extent asserted as an administrative expense. The contract was approved as a whole as a post-petition transaction, and the attorney's fee provision was a part of an integrated contract. This raises the question of whether a single provision of a post-petition contract can be carved out for separate treatment, especially when the litigation was initiated post-petition by the debtor-in-possession. The Court would ask the parties to address *In re Beyond Words Corp.*, 193 B.R. 540 (N.D. Cal. 1996), a case addressing that very issue, should that issue be presented for the Court's later consideration.